Robert A. HARDING, Plaintiff,

v.

WINN–DIXIE STORES, INC., a Florida corporation, Crawford & Company, a Georgia corporation, Doug Jamerson, in his official capacity as Secretary of the Department of Labor and Employment Security, The State of Florida, Defendants.

No. 95–1014–CIV–T–17(E).

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 28, 1995.

Alex Lancaster, Amy L. Sergent, Lancaster & Eure, Sarasota, FL, for Robert A. Harding.

Peter W. Zinober, Frank E. Brown, Nancy A. Roslow, Zinober & McCrea, P.A., Tampa, FL, for Winn–Dixie Stores, Inc., Crawford & Company.

Barbara Ann Ard, Henry A. Gill, Jr., Attorney General's Office, Dept. of Legal Affairs, Tampa, FL, Stephanie A. Daniel, General Counsel's Office, Department of Legal Affairs, Tallahassee, FL, for Douglas L. Jamerson, State of Florida.

### ORDER

KOVACHEVICH, District Judge.

This cause comes before the Court on two (2) motions to dismiss Plaintiff's Amended Complaint (Docket No. 11): (1) Defendants, State of Florida and Doug Jamerson's ("State Defendants"), Motion to Dismiss the Amended Complaint (Docket No. 12), filed with a Memorandum of Law in Support of State Defendants' Motion to Dismiss Amended Complaint (Docket No. 19), and Plaintiff's response (Docket No. 16) thereto; and (2) Defendants Winn–Dixie Stores, Inc. ("Winn–Dixie") and Crawford & Company's Motion to Dismiss Amended Complaint with Supporting Memorandum of Law (Docket No. 22) and Plaintiff's response (Docket No. 23) thereto.

### I. BACKGROUND

Plaintiff's Amended Complaint (Docket No. 11) alleges that Plaintiff, Robert A. Harding, was employed by Defendant Winn–Dixie as a grocery/stock clerk. His responsibilities as a clerk allegedly consisted of managing the dairy and frozen food department, unloading trucks, and stocking and ordering in the normal course of business for Winn–Dixie's place of business in North Port, Florida. On or about January 9, 1993, Plaintiff injured his left shoulder as a result of an on-the-job injury. After his injury, Plaintiff was treated by doctors and underwent surgery in treatment for his injury.

On or about November 3, 1993, Plaintiff's physician opined that the Plaintiff had reached maximum medical improvement with a resulting five (5%) percent permanent impairment rating according to Florida Impairment Guidelines. Plaintiff alleges that on that date he became entitled to payment of fifty-two (52) weeks of "wage loss" benefits in accordance with Florida Statutes, Section 440.15(3)(b) (1990). Additionally, Plaintiff alleges that he is disabled as defined under the Americans with Disabilities Act of 1990 ("ADA"); 42 U.S.C. Section 12112 *et seq.* in conjunction with 29 C.F.R. Sections 1630.1, 1630.4, 1630.5, 1630.7; and 42 U.S.C. Section 12132 *et seq.* in conjunction with 28 C.F.R. Section 35 due to his aforementioned permanent physical impairment. Furthermore, Plaintiff has alleged that he is a "qualified individual with a disability" under Title I and II of the ADA, 42 U.S.C. Section 12111(8) and 42 U.S.C. Section 12131(2), respectively. Ultimately, Plaintiff alleges that he is discriminated against and disparately impacted by the disproportionate application of the Florida Worker's Compensation Act ("FWCA") because he is not eligible for the same benefits as other disabled persons who are either less disabled or not disabled at all but who do have a higher impairment rating.

Consequently, Plaintiff alleges that he was discriminated against on the basis of his disability, in violation of the ADA. Regarding Title I of the ADA, Plaintiff contends that by engaging in the enforcement of Florida Statutes, Section 440.15 (1990) after the enactment of the ADA, Defendants denied his right to have equal eligibility for "wage loss" benefits to which other disabled injured workers were entitled. Additionally, Plaintiff alleges that the State Defendants have violated Title II of the ADA by enacting and enforcing Florida Statutes, Section 440.15 (1990), which operates to deny Plaintiff worker's compensation benefits available to other persons under the FWCA. Therefore, Plaintiff seeks a judgment declaring that Florida Statutes, Section 440.15 (1990) is violative of the ADA.

In response to Plaintiff's Amended Complaint, Defendants' motions to dismiss set forth the following arguments: (1) Plaintiff fails to state a cause of action for discrimination under the ADA; (2) Plaintiff is not a qualified individual with a disability within the meaning of the ADA; (3) the ADA does not reach allegations of discrimination between or among classes of persons with different disabilities or levels of disability; (4) the ADA does not guarantee equal benefits for all disabled persons; and (5) the ADA does not preempt the FWCA, which provides benefits equal to or greater than those provided for under the ADA.

### II. STANDARD OF REVIEW

▮ Upon review, the Court should not grant a motion to dismiss for failure to state a claim unless the plaintiff can prove no set

of facts in support of a claim entitling plaintiff to relief. *National Organization for Women, Inc. v. Scheidler*, —— U.S. ——, ——, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994). In ruling on the motion to dismiss, the Court must view the allegations set forth in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Additionally, the Court must accept all well-pleaded allegations in a plaintiffs complaint as true. *Gonzalez v. McNary*, 980 F.2d 1418 (11th Cir.1993). However, the Court will not accept conclusory allegations or legal conclusions masquerading as factual conclusions. *Fernandez–Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir.1993).

## III. DISCUSSION

### 1. *The ADA*

The ADA is a federal statute designed to prevent discrimination in the employment of qualified individuals based upon a disability. 42 U.S.C. Section 12101(b)(1). Title I of the ADA, 42 U.S.C. Sections 12111–12117, is a relevant portion of the Act for purposes of this action, as it governs employment and is the statutory basis for the first four (4) counts in Plaintiff's Amended Complaint. Additionally, Title II of the ADA, 42 U.S.C. Sections 12131–12134, is the statutory basis for the fifth count in Plaintiff's Amended Complaint which alleges a violation of that Title by the State Defendants.

■ In essence, the ADA was designed to prohibit the prejudicial treatment of disabled persons and enable those persons, with or without reasonable accommodation, to compete in the workplace and the job market based on the same performance standards and requirements expected of persons who are not disabled. *See* U.S. Equal Employment Opportunity Commission ("EEOC") Interpretive Guidance to Title I, Appendix to 29 C.F.R. Part 1630.[1] Initially, 42 U.S.C. Section 12112(a), provides the following:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. Section 12112(a).

Two primary theories of recovery are available under the provisions of the ADA. The first theory of recovery, known as "disparate treatment", prohibits intentional acts of discrimination by covered entities. 42 U.S.C. Section 12112(a). Alternatively, disabled persons claiming a violation of the ADA may recover under the theory of "disparate impact". 42 U.S.C. Section 12112(b); 29 C.F.R. Sections 1630.1, 1630.5, and 1630.7.

■ Under the "disparate impact" theory, employers lacking the element of intent will be held in violation of the ADA when that employer unreasonably: (1) classifies a person based upon a disability in a manner that affects the person's employment opportunities; (2) uses standards that result in discrimination based upon a disability; (3) denies certain benefits based upon a disability; or (4) uses criteria that tend to screen out disabled persons where the criteria are not job-related and based upon business necessity. *Id.* Accordingly, although actions may not be intentional, relief will be awarded when such actions have the effect of discriminating against protected individuals and are not grounded in business necessity. *Griggs v. Duke Power*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ Accordingly, to effectively state a cause of action under the ADA, the Plaintiff must show that he: (1) is disabled as defined under the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job at issue; (3) was terminated or denied certain employment benefits, for which he was otherwise eligible, by a covered entity; and (4) such termination or denial of benefits was

---

1. The EEOC's interpretive guidance, "while not controlling upon the courts by reason of [its] authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

based upon a disability. 42 U.S.C. Section 12112(a); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993); *Barry v. Burdines,* Consolidated Lead Case No. 94–1508–CIV–T–25C (M.D.Fla. July 31, 1990). The term "covered entity" is further defined within the ADA at 42 U.S.C. Section 12111(2) as "an employer, employment agency, labor organization, or joint labor management committee." Therefore, as noted by the Court in *Barry,* the Defendant Crawford & Company, which merely serves as an insurance company administering the instant FWCA benefits, does not fall under this definition and is entitled to dismissal on this ground alone. *Id.* at n. 3. Furthermore, neither of the State Defendants meet the statutory definition of a "covered entity" as set forth in Title I and are also entitled to dismissal on this ground.

In addition, the ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. Section 12102(2); 29 C.F.R. Section 104. Further, the ADA provides that a "qualified individual with a disability" is a disabled individual who, with or without reasonable accommodation, can perform the essential functions of the employment position the individual holds or desires, and who meets the eligibility requirements for the receipt of services of which he is being allegedly unfairly denied. *Barry citing* 42 U.S.C. Section 12111(8); 28 C.F.R. Section 35.104; *Tyndall v. National Education Centers,* 31 F.3d 209, 212 (4th Cir.1994). For purposes of this Order and ruling on the motions to dismiss only, the Court considers the Plaintiff to be a qualified individual with a disability as that term is defined within the ADA.

### 2. *The FWCA*

Plaintiff's claim also involves the FWCA, Chapter 440, Florida Statutes. The purpose of the FWCA is to protect injured workers and their dependents from the hardships that arise from a workers' injury or death resulting out of and in the course of employment. *McCoy v. Florida Power & Light Co.,* 87

So.2d 809 (Fla.1956). In order to protect these individuals, the FWCA provides benefits for medical bills and lost wages based upon a workers' diminished capacity to work through some impairment. Under the FWCA, injured employees receive timely benefits in exchange for forfeiting a common law right to sue for the injury, and employers benefit by receiving immunity from common law tort actions in exchange for accepting liability that is limited and determinate regardless of fault. *McLean v. Mundy,* 81 So.2d 501 (Fla.1955).

In order to be eligible for FWCA benefits which are provided to compensate for lost ability to work, a worker must show a partial or complete inability to work. Categories of benefits under the FWCA are delineated as: (1) temporary total disability; (2) permanent total disability; (3) temporary partial disability; and (4) permanent partial disability. Florida Statutes, Sections 440.14 and 440.15 (1990). The amount of workers' compensation benefits paid to an injured person are based upon the permanency and degree of the impairment and that workers' ability to earn income. *Barry v. Burdines,* Consolidated Lead Case No. 94–1508–CIV–T–25C (M.D.Fla. July 31, 1990).

Although the FWCA considers an individual to be disabled based upon an incapacity to earn wages commensurate to those received prior to any injury, consideration of the same impairment under the ADA may not result in a finding of disability where it does not substantially limit an individual's major life activity. *Id.* As to such a finding under the FWCA, this Court agrees with Judge Adams' determination in *Barry,* that an entitlement to workers' compensation benefits is a privilege of employment subject to the antidiscrimination provisions of the ADA. *Id.*

### 3. *Analysis*

As in *Cramer v. State of Florida,* 885 F.Supp. 1545 (M.D.Fla.1995), this Plaintiff also claims that the FWCA violates the ADA by applying a concept of "impairment" as opposed to "disability" in determining actual amounts of benefits payable to an injured

individual. Plaintiff submits that the violation occurs when persons with lesser impairment ratings receive lower benefits than individuals who are less disabled but have been assigned higher impairment ratings. Specifically, Plaintiff argues that Defendants discriminated against him: (1) on the basis of his disability when they denied him the same eligibility for "impairment" disability benefits to which other disabled injured workers were entitled; (2) by segregating, limiting and classifying Plaintiff's employment insurance opportunities and eligibility for wage loss disability benefits based upon an impairment rating; (3) applying standards, criteria, or methods of administration which are not job-related and consistent with business necessity by applying the use of an impairment schedule; (4) denying him equal employment opportunities guaranteed to all disabled persons under the ADA; and (5) excluding him from participation in, and denying benefits of services, programs or activities provided by the Defendants.

■■■■ As to the first basis of recovery available under the ADA, the Court finds that the Plaintiff fails to state a cause of action under the "disparate treatment" theory. Upon reviewing the allegations contained within Plaintiff's Amended Complaint, the Court finds no allegations of discriminatory intent on behalf of any of the named Defendants. Additionally, the Court notes that those facts alleged in the complaint are insufficient to raise an inference of intentional discrimination by the Defendants. *Barry citing, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■■■■ Next, the Court considered Plaintiff's claims in light of the second basis of recovery available under the ADA, the "disparate impact" theory. However, the Court also finds that Plaintiff has failed to state a claim under the alternative method of "dispa-

rate impact." The Plaintiffs argue that discrimination between or among disabled persons is a violation of the ADA. Moreover, Plaintiff alleges that he is entitled to equal eligibility for benefits made available to other injured workers. On the contrary, as explained by the Court in *Barry,* disabled persons under the ADA "are not entitled to equal access to all benefits within their class, but only to meaningful access to benefits with non-prejudicial treatment based upon reasonable factors." *Barry citing Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (finding that Section 504 of the Rehabilitation Act[2] did not guarantee handicapped people equal results from the provision of state Medicaid benefits).

■■■■ In like manner, the ADA and the Rehabilitation Act apply only to discrimination between or among disabled and non-disabled persons. *Traynor v. Turnage,* 485 U.S. 535, 548, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988). In *Traynor,* the Supreme Court considered whether the Veteran's Administrations's characterization of a "willful misconduct" provision contained in the Veterans' Readjustment Benefit Act of 1966 violated the Rehabilitation Act. *Id.* at 538, 108 S.Ct. at 1376. The characterization included alcoholism as "willful misconduct" for purposes of that Act; and, as such, the provision was applied to deny alcoholic veterans of certain educational benefits otherwise provided under that Act. Ultimately, the Supreme Court found that the "willful misconduct" provision did not undermine the central purpose of the Rehabilitation Act, Section 504 which is to assure "evenhanded treatment" to all handicapped individuals in relation to nonhandicapped individuals. *Id.* at 548–49, 108 S.Ct. at 1382 (citations omitted).

■■■■ In accordance with the rational espoused in *Alexander, Traynor,* and *Barry,* this Court also finds that the ADA does not require all disabled persons to receive equal eligibility to FWCA benefits regardless of

---

**2.** The Rehabilitation Act is the predecessor to the ADA. Thus, cases interpreting the Rehabilitation Act are regarded as authorities for interpreting

the ADA. *Moore v. Sun Bank of North Florida, N.A.,* 923 F.2d 1423 (11th Cir.1991).

differences in each person's disability and the effect that disability may or may not have on their ability to work. Furthermore, the Court also finds that the FWCA impairment rating system complies with the ADA by providing meaningful access to benefits to all disabled persons or injured workers. *Barry v. Burdines,* Consolidated Lead Case No. 94–1508–CIV–T–25C (M.D.Fla. July 31, 1990). Based upon Plaintiff's alleged facts and the uniform disability guide, the Court finds that provision of benefits under the FWCA is reasonable, job-related and consistent with business necessity.

In addressing Plaintiff's claim that the ADA preempts the FWCA, the Court turns to the language of the ADA itself. Specifically, Section 501(b) of the ADA provides the following:

> Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act.

42 U.S.C. Section 12201(b).

In light of the Court's finding, that the provisions of the FWCA in question do not discriminate in violation of the ADA, the Court also finds that the FWCA provides the requisite "greater or equal protection" to that contained in the ADA itself. As discussed above, the purposes of the ADA and the FWCA do not conflict with one another. Rather, the purposes of these statutes complement each other and together they provide different benefits to disabled persons in a broad range of situations and circumstances. Under the FWCA, injured workers are provided benefits in addition to the rights granted under the ADA by protecting workers when they are unable to work or to maintain full or appropriate employment. Accordingly, it is

**ORDERED** that: Defendants, State of Florida and Doug Jamerson's, Motion to Dismiss the Amended Complaint (Docket No. 12), and Defendants, Winn–Dixie and Crawford & Company's, Motion to Dismiss Amended Complaint (Docket No. 22) be

**GRANTED** and the Clerk of Court be **directed** to enter judgment in favor of all defendants in this case consistent with this order.

**DONE AND ORDERED.**