**Marjorie S. DESPORTE–BRYAN, Plaintiff,**

v.

**BANK OF AMERICA, f/k/a Nationsbank f/k/a Barnett Bank, Defendant.**

No. 007476CIVGOLD.

United States District Court, S.D. Florida.

June 21, 2001.

Marjorie S. Desporte–Bryan, Coconut Creek, FL, pro se.

Chad K. Lang, Joan M. Canny, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, FL, for Defendant Bank of America d/b/a Barnett Bank.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GOLD, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plain-

tiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim for Relief [D.E. 22], filed on January 26, 2001. Plaintiff filed a Response [D.E. 25] on February 12, 2001, and Defendant filed a Reply [D.E. 30] on March 5, 2001.

The *pro se*[1] Complaint was originally filed on October 5, 2001, with a First Amended Complaint and Demand for Jury Trial filed on January 8, 2001. The First Amended Complaint (hereinafter referred to as "the complaint") contains the following three counts: (1) Age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) Race discrimination in violation of Title VII; and (3) National origin discrimination in violation of Title VII and 42 U.S.C. § 1981. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

Defendant argues that the complaint should be dismissed pursuant to Fed. R.Civ.P. 12(b)(1), lack of jurisdiction over the subject matter, or, in the alternative, Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief may be granted. Having reviewed and carefully considered the parties' arguments, the applicable law, and the record as a whole, the Court concludes that Defendant's motion to dismiss should be granted.

## I. Background

The facts alleged in the Complaint, taken as true and read in the light most favorable to the Plaintiff for purposes of this Order, reveal the following.

Plaintiff Marjorie S. Desporte–Bryan is female, black, a naturalized American citizen of Jamaican descent, and over 40 years old. Plaintiff alleges that she was subjected to unlawful discrimination based on her age, race, and national origin by Defendant Bank of America f/k/a NationsBank f/k/a Barnett Bank (hereinafter referred to as "Defendant" or "Bank").

On or about May 8, 1997, Plaintiff applied for a position in the Professional Sales Manager Program at Bank. On or about May 15, 1997, Plaintiff met with Bank's Human Resources Generalist, who recommended Plaintiff for a second interview. It was the practice of Bank to have candidates interviewed by the hiring committee for the Professional Sales Manager Program. The hiring committee is made up of four of Bank's officers (two Branch Managers, one male and one female, the Human Resources Generalist, and a Market Executive). On or about May 15, 1997, Plaintiff met with a white male Branch

---

1. On May 16, 2001, Defendant filed a Notice of Supplemental Information [D.E. 31] indicating that, although Plaintiff is proceeding *pro se*, she is a licensed Florida attorney in good standing with the Florida Bar since before the commencement of this litigation. Plaintiff admitted in her Response [D.E. 32] that she is a member of the Florida Bar, but stated that she filed this action *pro se* and did not use her bar number because she is not qualified to represent herself in Federal Court, is bringing this action as an ordinary person, is not familiar with employment law, has no litigation experience, and is currently employed as a Real Estate Administrator, not an attorney. Furthermore, when Plaintiff filed her charge of discrimination with the EEOC, she was not barred. Based on these representations, the Court is satisfied that Plaintiff is properly proceeding *pro se*. Pursuant to Eleventh Circuit case law, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991).

Manager, and on or about May 16, 1997, Plaintiff met with the Market Executive for the Central Area, who is also a white male. No appointment was set for the Plaintiff to meet with the white female Branch Manager.

About two weeks later (approximately May 30, 1997), Bank's Human Resources Generalist informed Plaintiff that she was not chosen to participate in the Professional Sales Manager Program. Plaintiff alleges, on information and belief, that the reason given by Bank to deny Plaintiff employment in the program was pretextual, and that the application was denied so that Bank could employ much younger, mostly white college graduates without any foreign accent indicating national origin of Jamaican descent.

Bank's Human Resources Generalist encouraged Plaintiff to apply for a lower Senior Sales and Service Associate position and to wait until Bank was hiring again for the Professional Sales Manager Program to reapply. On or about June 12, 1997, Plaintiff was interviewed by the Branch Manager and Sales and Service Manager of Bank's Fort Lauderdale Office. Plaintiff was thereafter turned down for the Senior Sales and Service Associate position and was offered a lower position. On information and belief, the reason given by Bank for Plaintiff's denial was pretextual. Plaintiff was denied the position so that Bank could hire a much younger white American female.

On or about June 23, 1997, Plaintiff was interviewed by the Branch Manager of Bank's Deer Creek office and was offered the position by Bank's Human Resources Department, which Plaintiff accepted. However, on June 30, 1997, Bank informed Plaintiff that there was a misunderstanding and that Plaintiff was not accepted for the position. On information and belief, Bank's reason was pretextual. Plaintiff was denied the position so that Bank could hire a much younger college graduate.

Plaintiff alleges that, on information and belief, Defendant has engaged in a pattern and practice of discriminating against candidates for employment and employees on the basis of age, race, and national origin.

Plaintiff alleges that on December 17, 1997, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"). On July 7, 2000, the EEOC issued a Notice of Right to Sue (Conciliation Failure), and this lawsuit was filed within 90 days of receipt of the notice.

Plaintiff seeks back pay, front pay, prejudgment interest, compensatory damages, punitive damages, attorneys' fees, costs, a permanent injunction prohibiting Defendant from engaging in discriminatory conduct, and the institution of sensitivity training.

## II. Standard of Review

### A. Rule 12(b)(1)

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). "Factual attacks," on the other hand, challenge "the existence

of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 412–13 (quoting *Mortensen*, 549 F.2d at 891).

In this case, the Defendant has made a factual attack upon the Complaint with respect to whether the Defendant is subject to successor liability for the alleged violations of Barnett Bank and whether Defendant is therefore an "employer" under the applicable statutes. Because the facts necessary to determine jurisdiction concern the relationship between Barnett Bank and Bank of America subsequent to the acts of which Plaintiff complains, the merits of Plaintiff's claims are not implicated by this inquiry and the Court may consider the parties' affidavits and other evidence without converting this motion to a motion for summary judgment. *See Lawrence*, 919 F.2d at 1529. Plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir.1995).

## B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal of a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). On a motion to dismiss, the Court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the non-moving party. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). A very low sufficiency threshold is necessary for a complaint, or counterclaim, to survive a motion to dismiss. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). Moreover, a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *M/V Sea Lion v. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). However, a plaintiff must do more than merely "label" its claims. *See Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Dismissal is appropriate only when no construction of the factual allegations of a complaint will support the cause of action. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993) (citation omitted).

## III. Discussion

■ Defendant makes a two-tiered attack on Plaintiff's complaint. First, Defendant argues that dismissal of the entire complaint is appropriate for lack of subject matter jurisdiction because Bank of America is not liable for the alleged violations of Barnett Bank as the "employer" alleged to have failed to hire Plaintiff. Second, Defendant argues in the alternative that, should the Court determine that it has jurisdiction to hear Plaintiff's case, the Court should nonetheless: dismiss Plaintiff's national origin claim as not cognizable under § 1981 and because no right of action exists for alleged discrimination due to accent, dismiss Plaintiff's claim concerning the Deer Creek position for failure to satisfy statutory prerequisites to suit, and dismiss Plaintiff's claims for compensatory and punitive damages for age discrimination as not authorized by the ADEA. Because the Court finds that the complaint is subject to dismissal for lack of subject matter jurisdiction and that Bank of America is not subject to successor liability for the alleged discriminatory employment practices of Barnett Bank, the Defendant's second, alternative, arguments need not be reached.

### A. Plaintiff's Allegations

As noted above, Plaintiff has asserted three claims for relief, as follows: (1) Age discrimination in violation of the ADEA and Title VII; (2) Race discrimination in violation of Title VII; and (3) National origin discrimination in violation of Title VII and 42 U.S.C. § 1981. Plaintiff's original complaint identified the defendant as "Bank of America d/b/a Barnett Bank." In response to the motion to dismiss on December 12, 2000, Plaintiff filed a First Amended Complaint in which the defendant's identity was changed to "Bank of America f/k/a NationsBank f/k/a Barnett Bank." Throughout the First Amended Complaint, Plaintiff makes no attempt to distinguish the actions taken by Barnett Bank or Bank of America, describing them for all intents and purposes as one entity.

The ADEA states, in relevant part, that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a). Similarly, Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).[2] 42 U.S.C. § 1981 prohibits the impairment of "the same right ... to make ... contracts ... as ... white citizens," which overlaps with Title VII in the refusal to hire context and extends similar protections to applicants for employment. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 181, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989).

Although Plaintiff alleges that the discriminatory actions alleged to have taken place in the complaint were committed by "Bank of America f/k/a NationsBank f/k/a Barnett Bank," this allegation implies that Bank of America is liable as a successor employer/corporation, a legal conclusion

---

**2.** An employer is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). 42 U.S.C. § 1981 does not have this limitation. *See Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 303 n. 3, 114 S.Ct. 1510, 1515 n. 3, 128 L.Ed.2d 274 (1994).

that need not be accepted as true for purposes of the motion to dismiss. *See South Florida Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 408 n. 10 (11th Cir.1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."); *Harding v. Winn–Dixie Stores,* 907 F.Supp. 386, 389 (M.D.Fla.1995) (court will not accept "legal conclusions masquerading as factual conclusions."). If Bank of America is not a successor employer to Barnett Bank and did not assume the liabilities of Barnett Bank, then the Court lacks subject matter jurisdiction over Plaintiff's claims, and dismissal is appropriate.

## B. Successor Liability

■ The general rule of successor corporate liability is that, when one corporation sells its assets to another, the latter is not responsible for the seller's debts or liabilities absent an express or implied agreement to assume specific obligations. *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168 182 n. 5, 94 S.Ct. 414, 424 n. 5, 38 L.Ed.2d 388 (1973); *Preyer v. Gulf Tank & Fabricating Co., Inc.,* 826 F.Supp. 1389, 1395 (N.D.Fla.1993). However, in the context of the employee/employer relationship, courts have recognized that congressional policies against unfair and discriminatory labor practices embodied in statutes such as the National Labor Relations Act ("NLRA"), Title VII, and Section 1981 override common law rules of successor liability. *See, e.g., Golden State Bottling Co. v. National Labor Relations Board,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) (NLRA); *In re National Airlines, Inc.,* 700 F.2d 695, 698 (11th Cir.1983) (Title VII); *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 745–46 (7th Cir.1985) (Section 1981).

■ In applying the successor liability doctrine, the courts are mindful to balance the interests of the employees and the employer and labor law policy generally. *See In re National Airlines, Inc.,* 700 F.2d at 698. The public interest in the enforcement of congressionally established national labor policies must be weighed against the public interest in maintaining and encouraging the free flow of capital and the limited liability principle of corporations. *Howard Johnson Co. v. Hotel Employees,* 417 U.S. 249, 249, 94 S.Ct. 2236, 2236, 41 L.Ed.2d 46 (1974).

■ The case law articulates several factors that the court must consider in determining the applicability and appropriateness of successor liability. These factors are: (1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify imposition of liability. *Preyer v. Gulf Tank & Fabricating Co., Inc.,* 826 F.Supp. 1389, 1395 (N.D.Fla.1993). The final factor includes such things as: (a) whether the new employer uses the same plant; (b) whether it uses the same or substantially the same work force; (c) whether it uses the same or substantially the same supervisory personnel; (d) whether the same jobs exist under substantially the same working conditions; (e) whether the successor uses the same machinery, equipment, and methods of production; and (f) whether he produces the same product. *See id.* at 1395–96; *Musikiwamba,* 760 F.2d at 750. The test is fact specific and must be conducted in light of the facts of each case and the particular legal obli-

gation which is at issue. *In re National Airlines, Inc.*, 700 F.2d at 698 (citations omitted). Thus, the new employer may be a "successor" for some purposes and not for others. *Id.*

## C. Application of the Successor Liability Standard

Defendant argues that the imposition of successor liability is inappropriate in this case because Bank of America, through its predecessor NationsBank, did not have notice of Plaintiff's claims at the time Barnett Bank was acquired. Notice of the claim prior to purchase of the business or assets of the predecessor is "critical," as it "would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser ... when the successor .did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir.1985).

Defendant submitted an affidavit of Cathleen S. Poor[3], stating that NationsBank Corp. acquired Barnett Bank as of January 12, 1998, and that NationsBank and Bank of America merged on September 30, 1998, forming the new Bank of America Corporation. *See* Poor Aff., attached as Exhibit B to motion to dismiss. Plaintiff argues in response that the merger of Barnett Bank into NationsBank was actually not effective until October 8, 1998, and submits the "Plan and Agreement of Merger of Barnett Bank, National Association and Community Bank of the Islands with and into NationsBank, National Association," dated Sept. 2, 1998, as well as a

letter, dated Sept. 24, 1998, constituting the official certification of the Office of the Comptroller of the Currency of the merger of Barnett Bank, National Association, Jacksonville, Florida, Charter Nr. 9049, into and under the charter and title of NationsBank, National Association, Charlotte, North Carolina, Charter Nr. 14448, effective October 8, 1998. *See* Exhibits A–E to Plaintiff's Affidavit, attached to Response. In reply to these documents, Defendant submitted a copy of the American Financial Directory, Fall 1997, listing the holding company of Barnett Bank, National Association, as Barnett Banks, Inc., Jacksonville (*see* Exhibit B to Reply), as well as an authenticated copy of the "Certificate of Merger of Barnett Banks, Inc. into NB Holdings Corporation" indicating that merger of the holding company of Barnett Bank, N.A. and the holding company of NationsBank, N.A. became effective on January 9, 1998.

Based on this evidence, the relevant date on which the successor company must have had notice of the Plaintiff's discrimination claim in order to be held liable as successor on that claim is January 9, 1998. Plaintiff's submission of evidence regarding the merger of the two banking subsidiaries of NB Holdings Corporation (Barnett Bank, N.A. and NationsBank, N.A.) on October 8, 1998 does not impact this date or create a triable issue of fact because it is not relevant. It was only until January 9, 1998, that knowledge of .Plaintiff's claim would have allowed NB Holdings Corp. to factor the claim into its purchase decision or have taken action to protect itself from liability on the claim.

Plaintiff has attempted to argue that notice was adequate, even if the merger is

---

**3.** Cathleen S. Poor has served as Vice President, Corporate Equal Opportunity at Bank of America since September 1999 and at Nati-

onsBank from June 1988 until September 1998

considered to have taken place between NationsBank and Barnett on January 9, 1998, because Plaintiff submitted an Affidavit and Charge of Discrimination to the Florida Commission on Human Relations ("FCHR") concerning the claims at issue on or about December 17, 1997. *See* Desporte–Bryan Aff. at ¶ 1, attached to Response. The affidavit Plaintiff refers to is a handwritten affidavit signed by Plaintiff on December 17, 1997, containing Plaintiff's personal information and a narrative description of the alleged discriminatory actions of Barnett Bank, as well as a handwritten Charge of Discrimination containing a similar lengthy narrative of the events at issue, also signed on December 17, 1997, both of which were submitted to the FCHR. However, the January 29, 1998, letter from Robert E. Moultrie, II, FCHR Intake Counselor, to Plaintiff makes it clear that Plaintiff's December 17, 1997 affidavit and charge of discrimination were drafts, not official filings. The letter states, in relevant part:

> Enclosed is a draft of your potential complaint of employment discrimination which was prepared by me. In order for the Commission to proceed further with this matter, you must:
>
> 1. Review the complaint;
>
> 2. Sign the complaint in the designated spaces in the presence of a notary public;
>
> 3. Return the signed complaint to this office in the enclosed self-addressed envelope.
>
> Because a complaint of discrimination must be filed within the time limitation imposed by law ... I urge you to complete these steps as soon as possible.... [I]f you fail to provide us with the requested information within 30 days from the date of this correspondence, we will assume that you have decided not to pursue this claim and we will close this case.

Exh. C to Reply. Furthermore, a typed (with some handwritten corrections/additions) Charge of Discrimination was signed by Plaintiff on February 10, 1998 and stamped received by the FCHR on February 13, 1998. The Equal Employment Opportunity Commission sent a "Notice of Charge of Discrimination" to Barnett Banks, Inc., on or about May 7, 1998, informing them of Plaintiff's Title VII and ADEA claims with Plaintiff's February 10, 1998 Charge of Discrimination attached. Thus, Plaintiff's argument that December 17, 1997 is the applicable date of filing of her claims with the FCHR/EEOC is in error, and Plaintiff's draft submissions to the FCHR are not relevant in determining the date notice was provided to Barnett Bank or NationsBank of Plaintiff's discrimination claims.

Accordingly, the facts before the Court are undisputed that the parent holding company of NationsBank, N.A., NB Holdings Corporation, could not and did not have notice of Plaintiff's discrimination claims prior to the merger and acquisition of Barnett Banks, Inc., the parent holding company of Barnett Banks, N.A. This factor weighs heavily against imposing liability on NationsBank, and therefore also weighs heavily against imposing liability on Bank of America. The second factor, whether the predecessor was or is able to provide the relief requested, is not determinative. Plaintiff does not seek reinstatement, but she does seek injunctive relief. As noted by the Seventh Circuit, "perhaps no amount of continuity would suffice to impose liability on a successor when a predecessor has discriminated

against an entire class of individuals and the remedy is some sort of affirmative action decree or injunctive relief." *Musikiwamba*, 760 F.2d at 751. With regard to the third factor, continuity of operations, there are disputed issues of fact as to whether the Professional Sales Manager Program to which Plaintiff referred in her complaint is still in existence, in any form, at Bank of America and whether any of the individuals who comprised the panel that interviewed and had responsibility for deciding to hire Plaintiff into the Barnett Professional Sales Manager Program are still employed by Bank of America or any of its affiliates (*compare* Poor Aff., ¶ 4, 5, *with* Desporte–Bryan Aff., ¶ 3, 4). Given the definitive evidence regarding the lack of notice of Plaintiff's claims to Nations-Bank prior to its purchase of Barnett Bank, even if it is assumed that Plaintiff can demonstrate that the other factors weigh in favor of imposing successor liability, she has made no showing of exceptional circumstances, and it would thus be fundamentally unfair in this case to impose liability on Bank of America.

## IV. Conclusion

Based on the analysis set forth above, the Court finds that the imposition of successor liability in this case is not warranted. As such, the Court lacks subject matter jurisdiction over Plaintiff's complaint.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [D.E. 22] is GRANTED. It is further

**ORDERED AND ADJUDGED** that all pending motions not otherwise resolved by this order are dismissed as moot and this case is CLOSED.